UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CAROLINE VEMULAPALLI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:20-CV-120-SPM |
| | ) |
| TARGET CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion for Adverse Inference Instruction on Spoliation of Video Evidence (Doc. 113). Defendant has filed a response in opposition to the motion. (Doc. 145). In a subsequent filing, Plaintiff provided additional evidence and argument in support of the motion. (Doc. 145), and Defendant filed a response to that filing (Doc. 146). The Court heard argument on the motion, on the record, at the final pretrial conference held on February 18, 2022. For the following reasons, the motion will be denied.

**I.   FACTUAL BACKGROUND**[1]

On October 10, 2019, two days after the incident that gave rise to this lawsuit (an unsecured sign falling from a box onto Plaintiff's foot and injuring her while she shopped at a Target store), Plaintiff's counsel sent Defendant Target a notice to preserve all video that could have captured Plaintiff from the time Plaintiff entered the store to the time Plaintiff departed the store on the day of the incident. On October 15, 2019, Defendant's employee Joseph Neubauer acknowledged receipt of Plaintiff's Counsel's notice. On October 15, 2019, Joseph Neubauer emailed Cornelius Johnson and Myra Chaney at Target, describing the incident and requesting that

---

[1] The facts set forth are as presented in Plaintiff's motion and the exhibit attached thereto.

video evidence be sent to him of (1) the store entrance, (2) Plaintiff walking through the store before the incident; (3) the area where the incident occurred, from 40 minutes before to 20 minutes after it occurred (all camera angles); (4) the store exit, and (5) Plaintiff after the incident, until she left the parking lot. On October 17, Johnson responded, stating for (1), (4), and (5) that he would "pull video tomorrow and email" and for (3) that there was "No video of where incident occurred." He did not respond to request (2). *See* Pl.'s Ex. 1, Doc. 113, at p. 5. On December 19, 2019, Plaintiff filed suit in state court, and on January 25, 2020, the case was removed to this Court.

On February 16, 2020, Plaintiff served Defendant with discovery requests that included a request for Defendant to identify the person in charge of operating video surveillance in the store at the time of Plaintiff's injury, and any video footage that captured Plaintiff while she was at the store. On February 16, 2020, Plaintiff served Defendant with discovery requests that included a request for Defendant to identify the person in charge of operating video surveillance in the store at the time of Plaintiff's injury, and any video footage that captured Plaintiff while she was at the store. On April 17, 2020, Defendant responded to Plaintiff's request for production, stating that Defendant was not in possession of any video footage of Plaintiff. On May 13, 2020, Defendant identified Cornelius Johnson as the employee who would have been tasked with preserving any video footage or Plaintiff. Defendant was unable to produce Mr. Johnson for deposition, but Plaintiff was eventually able to locate him, subpoena him, and depose him. In his October 26, 2021 deposition, Mr. Johnson indicated that if he had received a request to preserve video footage, he would have done so. Following the deposition, Plaintiff served Defendant with a discovery request seeking any correspondence between any agent of Target related to the notification of Target employee Cornelius Johnson to preserve video evidence as requested in Plaintiff's counsel's letter of October 10, 2019. On December 31, 2021, in response, Target produced the correspondence

2

between Joseph Neubauer and Mr. Johnson that is attached to Plaintiff's motion as Exhibit 1. To date, Target has offered no explanation for what happened to the video footage Mr. Johnson said he would pull and email.

In the instant motion, Plaintiff asks the Court to instruct the jury at trial that it may or must presume the that Defendant's video surveillance footage of Plaintiff, which was never produced in discovery, was unfavorable to Defendant.

## II. DISCUSSION

"District courts have inherent authority to impose sanctions when a party destroys evidence that it knows or should know is relevant to potential litigation and thereby prejudices its potential adversary." *Hickerson v. Pride Mobility Prod. Corp.*, 243 F.R.D. 357, 359 (W.D. Mo. 2007).[2] Among other possible sanctions, "the Court may give a jury instruction on the 'spoliation inference,' an inference which permits the jury to assume that the destroyed evidence would have been unfavorable to the position of the offending party." *Ameriwood Indus., Inc. v. Liberman*, No. 4:06CV524DJS, 2007 WL 5110313, at *4 (E.D. Mo. July 3, 2007). For "an adverse inference instruction for spoliation to be warranted, a district court is required to make two findings: (1) there must be a finding of intentional destruction indicating a desire to suppress the truth, and (2) there must be a finding of prejudice to the opposing party." *Lincoln Composites, Inc. v. Firetrace USA, LLC*, 825 F.3d 453, 463 (8th Cir. 2016). The first requirement sets "a high bar because '[a]n adverse inference instruction is a powerful tool'; it 'brands one party as a bad actor' and 'necessarily opens the door to a certain degree of speculation by the jury, which is admonished that it may infer the presence of damaging information.'" *Davis v. White*, 858 F.3d 1155, 1160

---

[2] "In diversity cases, a district court applies federal law to the issue of adverse inference instructions for spoliation of evidence." *Burris v. Gulf Underwriters Ins. Co.*, 787 F.3d 875, 879 (8th Cir. 2015) (citing *Sherman v. Rinchem Co.*, 687 F.3d 996, 1006 (8th Cir. 2012)).

(8th Cir. 2017) (quoting *Morris v. Union Pac. R.R.*, 373 F.3d 896, 900 (8th Cir. 2004)). "[I]ntent rarely is proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Morris*, 373 F.3d at 901.

The circumstances present here do not warrant an adverse inference instruction based on spoliation. First, the record does not suggest that Defendant intentionally destroyed any video with a desire to suppress the truth. With respect to the video that would have been most relevant here—video of the incident itself or the area in which the incident occurred—there is no evidence that any such video ever existed. To the contrary, Mr. Johnson stated in his email that there was "[n]o video of where incident occurred." Thus, there can be no finding of intentional destruction of video of the incident or relevant area. With respect to the video of Plaintiff that apparently did exist—video of the Plaintiff before and after the incident—the Court acknowledges that Defendant's unexplained failure to preserve and produce the video is troubling. However, the Court does not believe that the "high bar" for finding intentional destruction has been cleared here. There is no direct evidence of intentional destruction, and (as discussed below) the missing video appears to be of very limited relevance to any disputed issues in the case, which would significantly reduce Defendant's possible motivation to destroy it. Under the circumstances here, the Court finds that it is more likely the video was lost or destroyed through negligence than through intentional action or inaction.

Second, even assuming, *arguendo*, that there was evidence that Defendant intentionally destroyed the video of Plaintiff before and after the incident, Plaintiff has not established that she has been prejudiced by such destruction. Any video of Plaintiff before the incident would appear to be of little or no relevance to any possible issue in the case. The video of Plaintiff after the

4

incident *could* contain information relevant to Plaintiff's claims: for example, it might show that she was bleeding or limping after the incident. But at the hearing, counsel for Defendant stated that Defendant does not dispute that Plaintiff was bleeding and probably limping, and that indeed Target's own witnesses have stated that Plaintiff was bleeding after the incident and they had to clean up blood from the floor. Plaintiff herself can also testify to this. Because the missing video appears to be of little or no relevance to any disputed issues in this case, and because the information that might have been contained in the video can also be obtained from other sources, the Court does not find that Plaintiff has been prejudiced by her inability to obtain the video.

### III.   CONCLUSION

For all of the above reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Adverse Inference Instruction on Spoliation of Video Evidence (Doc. 113) is **DENIED**.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of February, 2022.

5